UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE L. ARDDS<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BOBADILLA, et.al.,<br><br>　　　　　Defendants. | Case No.: 1:20-cv-00887-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 28) |

Plaintiff Antoine L. Ardds is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion-related motion for summary judgment, filed on May 7, 2021.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants Bobadilla and Alcocer for excessive force in violation of the Eighth Amendment.

On October 13, 2020, Defendants filed an answer to the complaint. (ECF No. 14.)

After an unsuccessful settlement conference, the Court issued the discovery and scheduling order on January 28, 2021. (ECF No. 25.)

On May 7, 2021, Defendants filed the instant motion for summary judgment. (ECF No. 30.) Plaintiff filed an opposition on June 9, 2021, and Defendants filed a reply on June 16, 2021. (ECF Nos. 29, 30.)

## II.

## LEGAL STANDARD

### A.  Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 1174, 136 S.Ct. 1850, 1858 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B.  Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

### III.

### DISCUSSION

#### A.   Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014).  Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review:

1  (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third
2  level appeal to the Office of Appeals (OOA).  Inmates are required to submit appeals on a standardized
3  form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty
4  days of the disputed event.  Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b).  The California
5  Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue.  To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.   If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).

**B.   Summary of Allegations Underlying Plaintiff's Claims**

On August 9, 2019, at approximately 9:59 p.m., while housed in the mental health crisis bed unit, one of the first watch psych tech approached his cell request to see what Plaintiff had in his hands.  Plaintiff complied by showing her a two- and one-half-inch string from his socks which he uses to tie his hair.  The psych tech notified Defendants Alcocer and Bobadilla.  Both Defendants approached Plaintiff's cell and gave them the items.  At approximately 10:10 p.m., Defendants Alcocer and Bobadilla informed all CNAs, LVNs, and RNs to vacate the hallway because they were "coming in to say hello" meaning if they did not wish to write a report to get out of the hallway and away from Plaintiff's door.  Plaintiff requested the presence of a sergeant or lieutenant.  Defendant Bobadilla opened the cell door and Defendant Alcocer entered with six other officers and a sergeant. Plaintiff was ordered to stand up and strip down to nothing and move to the back of cell.  Plaintiff complied as Defendant Bobadilla shut his cell door.  This was done by Defendants and their supervisor to ensure that there would not bey any witnesses.  While facing the back of the cell still naked, Defendant Alcocer slammed Plaintiff's face into the wall, by placing his hand on the back of his neck and pushing his head hard enough to cause Plaintiff to sustain a lip injury.  Plaintiff requested the sergeant to intervene, but it was ignored and Defendant Alcocer continued with his assault. Defendant Alcocer ordered Plaintiff to kneel down, and when Plaintiff began to comply, he was

4

1  immediately kicked in his right knee and slammed to the ground.  Plaintiff continued to plea to the
2  sergeant to intervene and he eventually ordered Alcocer to get off Plaintiff.
3         On or about August 11, 2019, a forty-eight-hour excessive use of force interview recording
4  was conducted.  Plaintiff was intentionally kept in the holding cell to hide his injuries.

### C. Statement of Undisputed Facts[1]

1.   Plaintiff has been incarcerated within CDCR since September 13, 1999, and was a prisoner at the time he filed this action. (Declaration of J. Mendez [Mendez Decl.] ¶ 7; Pl. Compl, ECF No. 1.)

2.   Between August 9, 2019 and December 9, 2019, Plaintiff submitted only one appeal/grievance that either (a) identifies correctional officer J. Bobadilla or correctional officer G. Alcocer, or (b) alleges that Plaintiff was subjected to excessive force on or about August 9, 2019, Log No. CSPC-3-19-05407.  Plaintiff also submitted a form 1824, Request for Reasonable Accommodation, which is not a grievance/appeal, but does receive a log number.  That was CSPC-3-19-05408, and the Reasonable Accommodation Panel informed Plaintiff his grievance was being investigated in CSPC-3-19-05407.  (Mendez Decl. ¶¶ 7, 12, Exs. B, F, G.)

3.   On August 16, 2019, Plaintiff submitted Appeal Log No. CSPC-3-19-05407, alleging that correctional officer G. Alcocer, subjected him to excessive force on August 9, 2019.  (Mendez Decl. ¶¶ 7-8, Exs. A, B.)

4.   The first level of review was bypassed, and Plaintiff's grievance was processed at the second level of review as a staff complaint on August 20, 2019.  A response denying the appeal at the second level was issued on or about September 26, 2019.  This grievance was then forwarded to the Institutional Executive Review Committee for further investigation.  (Mendez Decl. ¶¶ 8-9, Exs. A, B, C.)

5.   Plaintiff received seven notices of delay—on October 3, 2019, November 14, 2019, January 2, 2020, February 14, 2020, March 27, 2020, May 11, 2020, and June 23, 2020—associated

---

[1] Hereinafter referred to as "UF."

5

with the Institutional Executive Review Committee (IERC) review, and an amended second level response was issued on July 24, 2020.  (Mendez Decl. ¶¶ 9-11, Exs. A, B, D, E.)

### D. Analysis of Defendants' Motion

Defendants argue that Plaintiff failed to exhaust the administrative remedies because he did not obtain a decision at the third and final level of review for the only relevant appeal to this action.

Here, it is undisputed that between August 9, 2019 and December 9, 2019, Plaintiff submitted only one appeal/grievance that either (a) identifies correctional officer J. Bobadilla or correctional officer G. Alcocer, or (b) alleges that Plaintiff was subjected to excessive force on or about August 9, 2019, Log No. CSPC-3-19-05407.  Plaintiff also submitted a form 1824, Request for Reasonable Accommodation, which is not a grievance/appeal, but does receive a log number.  That was CSPC-3-19-05408, and the Reasonable Accommodation Panel informed Plaintiff his grievance was being investigated in CSPC-3-19-05407.  (UF 2.)

On August 16, 2019, Plaintiff submitted Appeal Log No. CSPC-3-19-05407, alleging that correctional officer G. Alcocer, subjected him to excessive force on August 9, 2019.  (UF 3.)  The first level of review was bypassed, and Plaintiff's grievance was processed at the second level of review as a staff complaint on August 20, 2019.  A response denying the appeal at the second level was issued on or about September 26, 2019.  This grievance was then forwarded to the Institutional Executive Review Committee for further investigation.  (UF 4.)  Plaintiff received seven notices of delay—on October 3, 2019, November 14, 2019, January 2, 2020, February 14, 2020, March 27, 2020, May 11, 2020, and June 23, 2020—associated with the IERC review, and an amended second level response was issued on July 24, 2020.  (UF 5.)

In opposition, Plaintiff contends he has "evidence" that refutes his failure to exhaust the administrative remedies in this case, the second level response did not clearly indicate what part of Plaintiff's appeal was granted and what part was denied, and he submitted Log No. CSPC-3-19-05407 to the Office of Appeals on August 21, 2020.

Plaintiff initially points to Exhibit C in support of his argument that he submitted an appeal of CSPC-3-19-05407 to the Office of Appeals for review.  (Pl. Opp'n at 6, ECF No. 29.)  Exhibit C is composed of a request for Plaintiff's CDCR 119 legal mail log; seven pages of Plaintiff's legal mail

6

log; a form 22 request dated January 29, 2020, for intervention into the appeals process associated with three appeals (none of which are CSPC-3-19-00547; a second Form 22 request dated June 9, 2020, for documents associated with an appeal (not CSPC-3-19-05407); a third Form 22 request that is not legible; a fourth Form 22 requested dated August 18, 2019, requesting documentation of a staff complaint filed regarding an incident that occurred on August 9, 2019 (presumably the incident at issue here); correspondence from the Prison Advocacy Network to the Office of Inspector General (OIG); and correspondence from the law firm of Rosen Bien Galvan and Grunfield to Plaintiff. (ECF No. 29, at pp. 96-119.)

The Form 22 request dated August 18, 2019, which presumably relates to Log No. CSPC-3-19-05407 as the alleged date of the incident is the same in that appeal, confirmed receipt of the staff complaint to the Appeals Coordinator at CSP-Corcoran, not the Office of Appeals. (Id. at 108.) Although there is an entry on Plaintiff legal mail log reflecting mail sent to the Office of Appeals on August 21, 2020, there is no indication that it was appeal no. CSPC-3-19-05407. Furthermore, even assuming that the mailing was related to appeal no. CSPC-3-19-05407 on August 21, 2020, it is clear that Plaintiff submitted it to the Office of Appeals after he filed the instant action on December 8, 2019.

Plaintiff's contention that the second-level response, issued on September 26, 2019, did not inform of what was granted and what was denied, is mistaken. The second-level response, dated September 26, 2019, specifically advised Plaintiff that his appeal was partially granted in that the appeal inquiry was conducted, including a review of the appeal documentation, interview of witnesses, and a video interview of Plaintiff. (ECF No. 28 at 17.) The appeal was denied in part, after the inquiry, because it was determined that staff did not violate CDCR policy with respect to Plaintiff's allegations. (Id.) Plaintiff was further advised that all staff personnel matters are confidential in nature and if he wished to appeal the decision or exhaust the administrative remedies, he must do so "through all levels of appeal review up to, and including, the Secretary's/Third Level of Review." (Id.) Thus, contrary to Plaintiff's contention, he was provided with clear instructions on how to exhaust his administrative remedies regarding CSPC-3-19-05407. Indeed, Plaintiff's assertion that he

mailed an appeal of the second-level response to CSPC-3-19-054078 to the Office of Appeals on August 21, 2020, belies any claim as to the unavailability of administrative remedies.

To the extent Plaintiff contends that the delay in issuing and receiving the second level response thwarted his exhaustion efforts, such claim is without merit. Plaintiff could not have reasonably believed prison authorities would not respond to his appeal. It is undisputed that while his appeal was pending, he was informed in writing seven separate times that there would a delay in responding to his appeal. (UF 5.) Prison officials need not strictly adhere to the time limits for response to an administrative grievance as long as the prisoner is given an explanation, as was done here. Rios v. Paramo, 14CV1073-WQH(DHB), 2016 WL 8731085, at *19-20 (S.D. Cal. July 15, 2016). Extensions of this nature are permitted by prison regulations. See Cal. Code. Regs. tit. 15, § 3084.8(d) and (e). Furthermore, upon conclusion of the second level of review of his appeal, Plaintiff continued his appeal at the third level, demonstrating that he believed administrative remedies were still available to him, despite the delay.

Furthermore, Plaintiff contends that he and his advocates mailed letters to Warden Clark, OIG, Office of Internal Affairs, and the Ombudsman which provided Defendants "notice" of the nature of his grievances and satisfied the exhaustion requirements. The prison's requirements, not the PLRA, defines the boundaries of proper exhaustion. Akhtar v. Mesa, 698 F.3d 1202, 1211 (9th Cir. 2012) (citing Jones v. Bock, 549 U.S. at 218) ("[T]he level of detail necessary in a grievance to comply with a prison's grievance procedures will vary from system to system and claim to claim[.]"); see also Woodford v. Ngo, 548 U.S. at 90-91 ("Proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"). Pursuant to CDCR's grievance procedure, letters to the Warden, divisions within CDCR, outside entities such as OIG, or prisoner advocacy groups and private law firms, do not suffice to provide notice and exhaust the administrative remedies. At the time relevant here, CDCR's grievance system required that all administrative grievances be submitted on CDCR Form 602s. Cal. Code Regs. tit. 15, § 3084.2(a)(1) (2019). The grievances were required to be submitted to the institution's appeals coordinator first and second levels of review. Cal. Code Regs. tit. 15, § 3084.2(c) (2019). Letters are not administrative grievances under CDCR's appeal process and cannot serve to

exhaust the administrative remedies. See, e.g., Fuqua v. Ryan, 890 F.3d 838, 844 (9th Cir. 2018) (citing Woodford v. Ngo, 548 U.S. at 90-91) (inmate's two letters to prison officials did not exhaust his administrative remedies as exhaustion requires complying with a particular agency's "critical procedural rules[.]"). Accordingly, the exhibits attached to Plaintiff's opposition are insufficient to demonstrate exhaustion of the administrative remedies.

Lastly, to the extent Plaintiff contends that the administrative remedies were effectively unavailable with respect to this grievance due to fear of retaliation by prison officials, his claim is without merit. "[A] prisoner is excused from the exhaustion requirement in circumstances where administrative remedies are effectively unavailable, including circumstances in which a prisoner has reason to fear retaliation for reporting an incident." Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 792 (9th Cir. 2018) (citing McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) ). "In order for a fear of retaliation to excuse the PLRA's exhaustion requirement, the prisoner must show that (1) 'he actually believed prison officials would retaliate against him if he filed a grievance'; and (2) 'a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance.' " Id. (citing McBride, 807 F.3d at 987).

Plaintiff fails to demonstrate that any Defendant threatened retaliation relating to Plaintiff's use of the prison's grievance system, and therefore Plaintiff has failed to meet the McBride standard. Indeed, as Plaintiff contends, he submitted a grievance to the third level of review on August 21, 2020, which belies his claim that he was deterred for fear of retaliation. Plaintiff's allegations are nothing more than generalized and speculative fear of retaliation which fails to satisfy the McBride standard.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. The instant action be dismissed, without prejudice, for failure to exhaust the administrative remedies.

9

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 25, 2021**

UNITED STATES MAGISTRATE JUDGE